UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SENGA BIGURE, | : | Case No. 1:16-cv-808 |
| | : | |
| Petitioner, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| MARK HANSEN, *et al.*, | : | |
| | : | |
| Respondents. | : | |

**ORDER GRANTING RESPONDENTS'
PARTIAL MOTION TO DISMISS (Doc. 9)**

This civil action is before the Court on Respondents' partial motion to dismiss (Doc. 9)[1] and the parties' responsive memoranda (Docs. 10, 11).

## I.   FACTS <u>AS ALLEGED</u> BY THE PETITIONER

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Petitioner; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Petitioner is a citizen of Burundi. (Doc. 1 at ¶ 10). He entered the United States on May 5, 2005, and filed an application for asylum in October 2005. (*Id.* ¶ 11, Ex. A). In support of his application for asylum, Petitioner admitted that he was an active

---

[1] Respondents include Mark Hansen, District Director, USCIS; Director, U.S. Citizenship and Immigration Services; Field Office Director, USCIS; Secretary, Department of Homeland Security; and U.S. Attorney General.

member of the FROLINA party[2] and had served as the driver of the president of the party. (*Id.*, Ex. A).

In removal proceedings on September 27, 2007, an immigration judge granted Petitioner's asylum application. (Doc. 1 at ¶ 12, Ex. B). In granting the application, the immigration judge determined that Petitioner had a credible fear and had not engaged in terrorist activity. (*Id.* at ¶ 14). Petitioner alleges that on May 6, 2009, he became a lawful permanent resident. (*Id.* at ¶ 18).

Petitioner filed a Form N-400, Application for Naturalization, on April 8, 2013. (Doc. 1 at ¶ 19, Ex. D). U.S. Citizenship and Immigration Services ("USCIS") denied Petitioner's N-400 on May 21, 2015, stating that Petitioner was not lawfully admitted for permanent residence because he was inadmissible at the time of adjustment pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(I).[3] (*Id.*) Specifically, the USCIS found that FROLINA fell within the definition of an undesignated terrorist organization pursuant to 8 U.S.C. § 1182(a)(3)(B)(vi)(III)[4] and that Petitioner had provided material support to

---

[2] The National Liberation Front (Front de Liberation Nationale – FROLINA) is an ethnically Hutu rebel group that sometimes functions as a political party in Burundi.

[3] Section 1182(a)(3)(B)(i)(I) defines as inadmissible an alien who "has engaged in a terrorist activity."

[4] The statute defines a "terrorist organization" to include "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in [terrorist activity]." 8 U.S.C. § 1182(a)(3)(B)(iv)(III). Organizations meeting this definition can be defined as "Tier III" organizations to distinguish them from organizations meeting the terrorist organization definition of 8 U.S.C. Section 1182(a)(3)(B)(vi)(I) ("Tier I") or 8 U.S.C. Section 1182(a)(3)(B)(vi)(II) ("Tier II").

FROLINA.[5] (*Id.* at ¶ 15). On June 17, 2015, Petitioner filed a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings. (*Id.* at ¶ 21). USCIS affirmed its denial of Petitioner's naturalization application on May 17, 2016. (*Id*. at ¶ 22).

Petitioner claims that USCIS erred because: (1) his conduct was not material enough to qualify as "engaging in terrorist activity" under 8 U.S.C. § 1182(a)(3)(B); and (2) the issue is *res judicata* due to the immigration judge's findings. Petitioner asks this Court to vacate USCIS's denial and order his naturalization.

Respondents argue that because the statutory authority requires that this Court conduct a *de novo* review and does not allow for the application of *res judicata*, the Court must dismiss Petitioner's claim for *res judicata*.

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

---

[5] The statute includes the commission of "an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training" to a Tier III organization in its definition of engaging in terrorist activity. 8 U.S.C. Section 1182(a)(3)(B)(iv)(VI)(dd).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. (*citing* Fed. Rule Civ. P. 8(a)(2)).

### III. ANALYSIS

In the second claim of his Petition, Petitioner asks this Court to find that the issue of his inadmissibility is resolved pursuant to *res judicata*. (Doc. 1 at ¶ 24). Essentially, Petitioner asks this Court to naturalize him by relying on the immigration judge's

findings of admissibility. Respondents argue that this violates 8 U.S.C. Section 1421(c), which requires this Court to make its own findings of fact and conclusions of law. Respondents argue that even if this Court found that *res judicata* is not statutorily barred, Petitioner's claim is not cognizable because the causes of action are not identical.

### A. Supreme Court Precedent

Petitioner cannot obtain citizenship by estoppel. *INS v. Pangilinan*, 486 U.S. 875, 885 (1988). A court of equity cannot, by avowing that there is a right but not a remedy known to the law, create a remedy in violation of law. *Id.* at 883. Moreover, the power to make someone a citizen of the United States has not been conferred upon the federal courts. *Id.* at 883-84. "Once it has determined that a person does not qualify for citizenship … the district court has no discretion to ignore the defect and grant citizenship." *Id.* (quoting *Fedorenko v. United States*, 449 U.S. 490, 517 (1981)). Thus, contrary to Petitioner's request for estoppel, "[n]either by application of estoppel, not by invocation of equitable powers, not by any other means does a court have power to confer citizenship in violation of the [] [e]ligibility requirements set forth in the Immigration and Nationality Act ("INA")]." *Id.*

Being lawfully admitted for permanent residence is a requirement to naturalize. 8 U.S.C. § 1429 ("[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter."). Petitioner's *res judicata* claim requests that this Court ignore the defect to naturalization in favor of the application of estoppel.

5

### B. *Res Judicata* and *De Novo* Review

Congress requires a court reviewing a naturalization denial to review the denial *de novo* and to "make its own findings of fact and conclusions of law." 8 U.S.C. § 1421(c). Specifically, Section 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court of the district in which such person resides …Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

*Id.* "Even if the [agency] is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the [agency's] findings or conclusions." *United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004).

The doctrine of *res judicata* bars a party from litigating a claim in a subsequent action if that same cause of action resulted in a final judgment on the merits. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009). However, the rules of claim preclusion do not apply when the statute clearly exhibits an intent that preclusion not apply. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress has legislated with an expectation that the principle [of preclusion] will apply except when a statutory purpose to the contrary is evidence."). In the case of judicial review of an agency's denial of naturalization, Congress has expressly required that the court undertake a *de novo* review and reach its own findings of fact and conclusions of law.

6

8 U.S.C. § 1421(c).  The conclusion by multiple circuit courts that a Section 1421(c) reviewing court has the "final word" and does not defer to the agency's findings or conclusions demonstrates that 8 U.S.C. Section 1421(c) cannot be bound by an agency's previous determination.  *See, e.g., Hovsepian*, 359 F.3d at 1162.  This Court cannot make its own findings of fact and conclusions of law as statutorily required by Section 1421(c) this Courtit is bound by *res judicata* to follow the immigration judge's findings and conclusions.

 Petitioner argues that *res judicata* can be reviewed *de novo*.  *Jang v. United Techs. Corp.*, 206 F.3d 1147 (11th Cir. 2000).  Specifically, Petitioner claims that other courts have reviewed the issue when an immigration judge and USCIS reach different conclusions.  Petitioner cites two cases, *Amrollah v. Napolitano*, 710 F.3d 568 (5th Cir. 2013) and *Islam v. U.S. Dep't of Homeland Sec.*, 136 F. Supp. 3d 1088 (N.D. Cal. 2015), in support of his argument.  These two cases are distinguishable from the instant case because the immigration denials in those cases are adjustments of status applications and not naturalization denials.  The government's decision to deny the adjustment of status applications was challenged under the Administrative Procedure Act ("APA") in both cases.  *Id.*  Here, Petitioner's challenge is not brought pursuant to the APA, but rather Section 1421(c), which requires that the Court conduct the review "de novo, and the Court shall make its own findings of fact and conclusions of law."  8 U.S.C. § 1421(c).  Circuit courts have consistently affirmed that a court reviewing a naturalization denial

7

pursuant to Section 1421(c) "has the final word and does not defer to any of the [agency's] findings or conclusions." *Hovsepian*, 359 F.3d at 1162.

### C. *Res Judicata* and Different Cause of Action

Even if *res judicata* applied to this Court's review of a naturalization denial under Section 1421(c), Petitioner does not sufficiently allege that he meets the elements of *res judicata*. For *res judicata* to apply, the following elements must exist:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bragg*, 570 F.3d at 776. Petitioner's asylum claim in his removal proceeding is not the same cause of action as Petitioner's claim that he is entitled to become a citizen in the naturalization proceeding. This Court must consider whether there is "an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992).

The evidence necessary in Petitioner's removal proceeding is different from the evidence necessary in his naturalization proceeding. The primary issue in Petitioner's removal proceeding is whether he can remain in the United States, while the primary issue in a naturalization proceeding is whether he can become a citizen. In the removal proceeding, the government bears the burden of proving removability with clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A). In the naturalization proceeding, Petitioner has the burden to prove, by a preponderance of the evidence, that he is eligible

to become a citizen. *Berenyi v. Dist. Dir., I.N.S.*, 385 U.S. 630, 637 (1967). The doctrine of *res judicata* does not apply to causes of action with different burdens of proof. *Helvering v. Mitchell*, 303 U.S. 391, 397 (1938) ("The difference in degree of the burden of proof in criminal and civil cases precludes the application of *res judicata*.").

## IV. CONCLUSION

For these reasons, Respondents' partial motion to dismiss (Doc. 9) is **GRANTED**. Petitioner's claim for *res judicata* fails as a matter of law and is therefore **DISMISSED**.

**IT IS SO ORDERED**.

Date:  1/3/17

_____
Timothy S. Black
United States District Judge